UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

WILLIAM E. KELLY #110375 )
)
v. ) NO. 2:06-CV-194
)
WAYNE ANDERSON, Sheriff; BRENDA )
HENSLEY, Jail Adm'r; and PENNY )
TESTER, Medical Adm'r )

**MEMORANDUM OPINION**

## I. Introduction

William E. Kelly, an inmate in a West Tennessee prison, brings this *pro se* civil rights action for injunctive and monetary relief under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was denied mental health care while confined in the Sullivan County Detention Center (SCDC). The parties have filed cross-motions for summary judgment and each party has responded in opposition to the other's motion. [Docs. 36, 38, 46, 49].

Defendants have supported their motion with the affidavits of defendant Penny Tester, SCDC Medical Administrator, and Lorri Fennell, an employee with Frontier Health, Inc., who serves as SCDC's Criminal Justice Mental Health Liaison; excerpts and exhibits from plaintiff's deposition; and a brief. [Docs. 36, 37]. In the

motion, defendants argue that plaintiff has not established that they acted with the requisite deliberate indifference;[1] that he has failed to state a claim against them in their official capacities; and, by amendment to their motion, that they enjoy qualified immunity if, indeed, plaintiff has named them in their individual capacities.

In support of his motion, plaintiff offers a brief, [Docs. 38, 39], arguing that he has established that defendants were deliberately indifferent to his need for adequate psychiatric care and that, moreover, they are liable to him under the theory of respondeat superior; in their official capacities [ because his injury was caused by their policy, i.e., Frontier Health Services Liaison Policy]; and lastly, citing to *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001), in their individual capacities as well, since they had fair notice that they were being sued in that capacity by virtue of his request for punitive damages.  For the reasons below, defendants' summary judgment motion will be **GRANTED**, plaintiff's motion will be **DENIED**, and the case will be **DISMISSED**.

## II.  Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed.

---

[1]  Deliberate indifference is an element of a prisoner's Eighth Amendment claim.  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court is obliged to view the facts and all inferences to be drawn from them in the light most favorable to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  However, once a motion for summary judgment is made and supported with affidavit testimony, the non-moving party cannot rest upon the mere allegations or denials in its pleadings, but must present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  Indeed, that party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006).

### III. **Background**

The allegations in the complaint are limned in the following two paragraphs.  Plaintiff has been diagnosed and treated for severe depression, paranoia, a sleep disorder, and post-traumatic stress.  At the time the complaint was filed, he slept no more than 2 - 4 hours at a time and suffered from the stress of a victim's death, divorce court, and the loss of a job and of family, etc. On June 26, 2006, while confined in SCDC, he asked for psychological assistance, but was informed by defendant Penny Tester that she would not provide him any mental health care or medications.  Plaintiff filed a grievance concerning this matter.  The response to his

3

grievance indicated that mental health services were unavailable at SCDC. He spoke with defendants Sheriff Wayne Anderson and Jail Administrator Brenda Hensley and also sent them notarized letters concerning his problem, but they too (impliedly) denied him mental health care.

As a result of not being provided such care, plaintiff has lost weight, is weak from not eating properly, sits and cries for hours at a time, and cannot distinguish one day from another. Plaintiff asserts that defendants were deliberately indifferent to his need for mental health care in violation of his right to such care under the Eighth Amendment.

Defendants give a somewhat different version of these events. From their submissions, including the affidavit of defendant Penny Tester, SCDC's Health Administrator [Doc. 36, Attachs. 1 - 4], the Court has gleaned the facts which follow. SCDC has a licensed medical doctor on duty once a week and on call at all times, as well as a staff of nurses—each of whom has completed a course in psychology—on duty 24 hours a day, seven days a week. As part of SCDC's overall health care plan, mental health services are available to inmates with psychological problems who request mental health assistance or who are referred for such assistance by officers or nurses. After such a request or referral, the inmate is screened and his mental health care is facilitated by the Criminal Justice Mental Health Liaison, who is employed by

4

a medical services provider, Frontier Health, Inc. During an eight-month period [August 2006 to March 2007], this system resulted in some 179 inside mental health referrals, 79 outside mental health referrals, and 6 admissions to a mental hospital.

Plaintiff was incarcerated in SCDC from August 31, 2005 to August 29, 2006. When plaintiff was being processed into the SCDC, he was asked questions concerning his medical history and his answers were recorded on an intake sheet. The intake sheet reflected that plaintiff had not received treatment or been hospitalized for any mental disturbances or suicidal behavior and that the only health problem for which he was being treated was his back.

Even so, nine days later, while undergoing a physical examination, plaintiff stated that he had suffered from suicidal ideas/attempts and sometimes a depressed mood in the past, but had no such ideation or mood currently. He also indicated that he had never received psychiatric or psychological treatment and was not then suffering and had never suffered from agitation, paranoia, loose associations, hallucinations, delusions, bizarre thoughts/behavior, or emotional/social withdrawal. Finally, he represented that he was not currently taking any psychotropic medications and that there were no other medical or psychological issues of which SCDC needed to be aware. His weight was entered on his chart as 158.5 pounds.

On October 10, 2005, plaintiff submitted a medical care request, complaining of depression. That request resulted in a same-day referral to the Criminal Justice Mental Health Liaison. On November 9, 2005, Lorrie Fennell, who occupied that position, met with plaintiff. Ms. Fennell offered him alcohol and drug counseling, then recommended "Bridges" group counseling and, finally, advised him to see the jail physician. Plaintiff refused each option. Ms. Fennell indicated on the Mental Health Referral form that she would monitor him as needed. [The form also reports that, during this interview, plaintiff mentioned that he had been treated for depression at Woodbridge two to three times in the past.]

Plaintiff presented his next request for mental health care on June 26, 2006, asking to see a "phytrist (mental health)."[2] On that same date, a mental health referral was made. Ms. Fennell's response to that referral appears at the bottom of the Mental Health Referral form. Ms. Fennell indicated that plaintiff had not been taking psychological medications for ten months, suggested that he fill out a sick call slip to see a medical doctor if he had a medical issue, explained that he did not meet the criteria for any further liaison services, and determined that no further contact was necessary.

The following day, plaintiff submitted a grievance, complaining that he

---

[2] Between the October and June sick call requests, plaintiff filed six requests for medical care, though none involved mental health care.

needed to see a psychiatrist and/or a counselor and that Ms. Fennell's response to his previous request for mental health care [impliedly] did not address the issue presented in the grievance because he had not asked anything about medications, but instead had asked for mental health counseling. The grievance was answered by defendant Tester, who stated that "[w]e do not have not have a mental health counseling here at the jail." Plaintiff did not appeal the grievance.

Next, in a July 5, 2006 notarized letter, depicted by plaintiff as an attempt to exhaust administrative remedies prior to his bringing a civil rights suit in federal court, he advised defendant Sheriff Wayne Anderson [and perhaps, Major Brenda Hensley, since the letter was also addressed to her] that he had received treatment at Woodridge and TDOC for a variety of issues. Plaintiff also described the nature of his June 26th request for mental health care, the grievance which followed, and the responses thereto.

This complaint was filed on August 24, 2006, and, five days later, plaintiff, weighing the same as he did when the complaint was filed, but 4.5 pounds less than he did in September, was transferred to a West Tennessee prison. [Docs. 2, 4, 36, Attach. 1]. The day after his arrival at the prison, plaintiff was placed on medication and his sleep- and appetite-related problems ceased. [Doc. 36, Attach. 4, Excerpts of Pl's Deposition, at 8].

7

IV. **Discussion**

There are two preliminary matters which must be addressed. First, plaintiff has requested injunctive relief. However, a prisoner's request for injunctive relief against jail officials cannot be granted once he is transferred from the correctional institution of which he complains to a different facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996). That is the situation here. Plaintiff is no longer confined in SCDC, and it is obvious that he could obtain no benefit from an injunction against SCDC officials or employees. Thus, this claim has become moot.

Secondly, plaintiff argues that defendants are liable to him under the theory of respondeat superior. Unfortunately for plaintiff, this particular theory cannot serve as a basis for recovery from defendants. Liability under § 1983 must be based on more than respondeat superior, or a defendant's right to control employees. *See Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir. 1995); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Therefore, claims predicated on this theory have no validity in this lawsuit.

A. *The Applicable Law*

The claims in this action which remain for disposition are governed by the Eighth Amendment, which proscribes punishments that involve the unnecessary and wanton infliction of pain. U. S. Const. amend. VIII. Deliberate indifference to

an inmate's serious medical needs constitutes an unnecessary and wanton infliction of pain and, therefore, a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to establish "deliberate indifference" on the part of a jail official, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.*, at 837. Medically-necessary psychological treatment may amount to a serious medical need. *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (listing cases). The subjective component requires a plaintiff to show that a defendant acted with a conscious disregard to a substantial risk of serious harm to him. *Farmer*, 511 U.S. at 837. The latter showing must comprise more than mere negligence, and if a defendant took reasonable measures to abate the harm, he or she will not be held liable, even if the harm was not ultimately averted. *Id.*, at 835-36. Claims of negligence are insufficient to entitle a plaintiff to relief. *Id.*, at 835; *Estelle*, 429 U.S. at 105-06.

B. *Analysis*

In this case, plaintiff's first request for psychological care resulted in a referral to the person who served as the Mental Health Liaison and, in that position, was responsible for facilitating mental health care for SCDC inmates. That person,

9

Lorrie Fennell, recommended to plaintiff several courses of action. More specifically, she suggested that he participate in alcohol and drug counseling or group counseling[3] or that he consult the jail physician for medical issues. Plaintiff rejected each suggestion.

Plaintiff explained, in his deposition, that he had refused to see the jail physician about his psychological needs because "[a] medical doctor couldn't help me for my problems that I was having. I needed to see a psychiatrist," though he also admitted that seeing the jail physician might have been a fair place to start. [Attach. 4, Excerpts of Pl's Depo., at 12-13, *see also Id.*, at 9-11, 14-15]. Plaintiff further explained that there was "no need to see a medical doctor. They were going to charge me money that I didn't have and if I got lucky enough to get any money, they were just going to take it so a medical doctor wouldn't have helped me any." [*Id.*, at 14].

Defendants did not disregard plaintiff's need for psychological medical care. They did not ignore his two requests for such care, but referred him to the person designated to facilitate his psychological care. That person then met with

---

[3] In plaintiff's deposition, he acknowledged that he had a longstanding problem with alcohol and drugs and stated that he was enrolled in an alcohol and drug program at the West Tennessee prison. [Attach. 4, at 16].

plaintiff, interviewed him, and invited him to participate in drug counseling or group counseling or to consult the jail doctor. The fact that plaintiff chose to reject each of her recommendations, insisting that he needed to see a psychiatrist, not a jail doctor, does not mean that the steps taken by defendants to address plaintiff's psychological problems were not reasonable. Had plaintiff chosen to see the jail physician about his problems, he might have obtained that which he sought—a psychiatric consultation, even though he might have been assessed a nominal fee for that visit and even though, as he stated in his response, he believed that the jail doctor was not qualified to treat the psychiatric needs of inmates. [Doc. 49, Pl's Response to Defs' Mot for Sum. Judg., at 1].

"The right to be free from cruel and unusual punishment does not include the right to treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981). The Court does not see any conduct in this case that rises to the level of deliberate indifference. Because the questioned conduct cannot be said to constitute an unnecessary and wanton infliction of pain, the allegations regarding such conduct do not state a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. And because the conduct complained of is not of a constitutional variety, plaintiff has no claim for relief against defendants, in either their official or individual capacities.

## V. Conclusion

Accordingly, for all the above reasons, defendants' motion for summary judgment will be **GRANTED**, plaintiff's motion for summary judgment will be **DENIED**, and this action will be **DISMISSED**.

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
